UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────

BRANDON E. OGBOLU,
                        Plaintiff,

             -v-

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW
YORK, *et al.*,
                        Defendants.

21-CV-1697 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    *Pro se* plaintiff Brandon Ogbolu brings this action against the Trustees of Columbia University in the City of New York, Lee C. Bollinger, Jane E. Booth, Patricia S. Catapano, and Andrew W. Schilling ("Defendants"). Defendants have moved to dismiss Plaintiff's third amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. No. 79 ("Motion").) Plaintiff has also moved for a preliminary injunction enjoining Columbia University from administering its tuition debt to loan conversion practice. (Dkt. No. 93.) For the reasons that follow, Defendants' motion to dismiss is granted and Plaintiff's motion for a preliminary injunction is denied.

**I.    Factual Background**

    The following facts are drawn from the complaint and are assumed true for purposes of this motion.

    Plaintiff Ogbolu graduated from Columbia College of Columbia University in 2012. (Dkt. No. 69 ("Third Amended Complaint") ¶ 16.) While in attendance, Plaintiff accumulated student debt, which was converted into two private student loans following his graduation. (Third Amended Complaint ¶ 31.) As early as December 2016, Plaintiff sent letters and emails

1

to Defendants regarding the University's tuition policies and their impact on his mental well-being. (*See, e.g.*, Third Amended Complaint ¶¶ 27, 31, 33, 37, 42.) Beginning in 2017, Plaintiff began communicating with the University specifically regarding his loans, ultimately alleging that the loans were unlawfully made. (Third Amended Complaint ¶ 42.) These communications spanned almost a year and a half — from May 29, 2017 to November 23, 2018. (Third Amended Complaint ¶ 42.)

In April 2019, Plaintiff and Defendants entered into settlement discussions regarding the Plaintiff's outstanding student loan debt. (Third Amended Complaint ¶ 43.) Plaintiff, who believed that he had Asperger syndrome, notified Defendant Andrew Schilling of his self-diagnosis during these settlement discussions on October 17, 2019. (Third Amended Complaint ¶ 9.) Plaintiff was officially diagnosed with Asperger syndrome in January 2021. (Third Amended Complaint ¶ 3). The settlement negotiations lasted until October 29, 2019, when Plaintiff and Defendants finalized a settlement agreement. (Third Amended Complaint ¶ 10.) The settlement agreement between Plaintiff and Defendants reads in part:

> In consideration of the Settlement Payment and Refund, Mr. Ogbolu releases and discharges Columbia, its affiliates, subsidiaries, successors and assigns and its and their present and former trustees, officers, employees, and counsel (Released Parties) from any and all claims and/or liabilities of any kind whatsoever, whether known or unknown, that he has or may have arising out of or relating in any way to the Covered Claims.

(Dkt. No. 81-1 ("Settlement") at 2, ¶ 2.) The "Covered Claims" include "claims for compensatory and punitive damages, and including specifically claims for the return of funds, late fees, interest, emotional distress, lost earnings, medical expenses, and attorney's fees, among other things" with respect to "certain repayment agreements" and "certain improper servicing, collection and credit reporting activity" during the period of time from January 1, 2002 to October 29, 2019. (Settlement at 1.) Under the terms of the settlement agreement, Defendants

agreed to refund Plaintiff's payments, which totaled $35,779.80, and also give Plaintiff a settlement payment. (Settlement at 2, ¶ 1.) On February 24, 2020, Plaintiff discovered that the 1099-MISC tax form sent to him by Defendants reported the refund payment as income rather than as a refund. (Third Amended Complaint ¶ 50.) Plaintiff reported this error the same day and received a corrected form about two weeks later. (Third Amended Complaint ¶ 50.)

In his third amended complaint, Plaintiff alleges thirty-three separate federal, state, and local claims against Defendants. Primarily, Plaintiff alleges that Defendants subjected him to unlawful loans; improperly manipulated him into accepting a settlement; breached the settlement; and inflicted emotional distress by erroneously sending a mislabeled form; and that all of this was done while Plaintiff had Asperger syndrome, which Defendants knew or should have known, rendering Defendants' actions unlawful. Plaintiff seeks $175 million in compensatory and punitive damages, fees and costs, and pre-judgment and post-judgment interest. (Third Amended Complaint at 104.) Additionally, Plaintiff filed a motion for a preliminary injunction asking the Court to enjoin Defendants from converting student tuition debt to private student loans. (Dkt. No. 93.)

## II.     Legal Standard

In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept as true all well-pleaded factual allegations in the complaint and "draw[] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (citation

omitted).

Moreover, courts must afford a *pro se* plaintiff "special solicitude" before granting motions to dismiss or motions for summary judgment. *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however unartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and marks omitted). Indeed, courts interpret a *pro se* plaintiff's pleadings "to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (citation omitted). "Even in a *pro se* case, however, 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)).

In order to secure a preliminary injunction pending resolution of the case, the party seeking the injunction "must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018) (citing *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)). Where the injunction sought is one which would disrupt the status quo pending resolution of the case, the party seeking the injunction "must meet a heightened legal standard by showing a clear or substantial likelihood of success on the merits." *Id.* (internal quotations omitted).

**III.     Discussion**

As a preliminary matter, the Court will consider the Settlement when considering these claims because it is integral to the Complaint.  "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotations omitted).  Where a complaint heavily relies upon a document incorporated by reference such that the document is integral to the complaint, a court may consider the document.  *Id.*  Here, the Settlement is integral to the complaint because several of the claims in the Complaint are based upon violations of the Settlement, and it is frequently referenced throughout the Complaint.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 n.4 (2d Cir. 2002) (affirming district court's consideration of several contracts on a motion to dismiss because the complaint was "replete with references to the contracts and requests judicial interpretation of their terms").

**A.     Settlement Agreement Voidability**

Plaintiff released Defendants from any liability related to any claim arising from the actions that occurred prior to the signing of the Settlement on October 29, 2019.  Plaintiff argues that the Settlement is void and thus he is not bound by its terms.  Under New York law, "a valid release constitutes a complete bar to an action on a claim which is the subject of the release."  *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011) (quoting *Glob. Mins. & Metals Corp. v. Holme*, 25 A.D.3d 93, 98 (1st Dep't 2006)).  "If the language of the release is clear and unambiguous, the signing of a release is a jural act binding on the parties."  *Id.* (internal quotations omitted).  Once a defendant presents a signed release, the burden shifts to the plaintiff to demonstrate that there is some sufficient reason to void the release.  *Id.*  The traditional bases for invalidating a release are "duress, illegality, fraud, or mutual mistake."  *Id.* (internal quotations omitted).  "[A] release may encompass . . . unknown

5

fraud claims"; accordingly, if a party later challenges the release as fraudulently induced, he must "identify a separate fraud from the subject of the release." *Id.* For the reasons explained below, Plaintiff has not demonstrated that the release is void. Accordingly, those claims which are precluded by the Settlement are dismissed.[1]

### 1. Undue Influence

Plaintiff first asserts that he only agreed to the Settlement under undue influence. To show undue influence in New York, a plaintiff "must prove that it contracted under circumstances indicating that a relationship of control existed" and that the defendant "had exerted influence over the other to destroy the [plaintiff]'s free will and substitute for it the will of the [defendant]." *TufAmerica, Inc. v. Codigo Music LLC*, 162 F. Supp. 3d 295, 327 (S.D.N.Y. 2016) (quoting *Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 393 (S.D.N.Y.2001)). The burden on the Plaintiff to demonstrate this is a heavy one, and the conduct alleged must be "worse than even pressure, no matter how bad." *Id.* (internal quotations omitted).

Plaintiff's claim is premised on the argument that Defendants knew or should have known of Plaintiff's undiagnosed Asperger syndrome due to the nature of the communications between Plaintiff and Defendants. On this premise, Plaintiff argues that Defendants, both before and during settlement negotiations, deliberately exacerbated his condition by engaging in stalling tactics and evading his communications. Plaintiff also alleges that Defendants took advantage of Plaintiff's lack of an attorney. He flags an email inadvertently sent by Defendant Catapano to Plaintiff's former counsel in which Catapano stated that she would ignore Plaintiff's counsel for

---

[1] Specifically, Counts 1–15 and 28–32, which solely involve conduct covered by the Settlement, are wholly dismissed, and Counts 16–22, which includes conduct that occurred after the signing of the Settlement, are partially dismissed insofar as they relate to conduct covered by the Settlement.

several days. (Third Amended Complaint ¶ 44). Plaintiff viewed this as a lack of respect for his attorney, which motivated him to separate from his attorney, contributing to the undue influence exerted on him. The Court considers each alleged source of undue influence in turn.

The argument that lengthy negotiations constituted undue influence is without merit. As alleged, Defendants' conduct would amount only to "mere pressure." *See TufAmerica*, 162 F. Supp. 3d at 328 (concluding that an 84-year-old plaintiff faced only "mere pressure" even though the other side frequently switched terms and even though plaintiff was susceptible to confusion and forgetfulness). Regarding Plaintiff's lack of an attorney, the lack of consultation with an attorney before signing the release does not invalidate or preclude enforcement of the release. *See In re Cheng Ching Wang*, 981 N.Y.S.2d 439, 441 (2d Dep't 2014) (holding that the lack of consultation with an attorney before signing a release does not preclude enforcement of the release). Plaintiff does not allege facts suggesting that his decision to separate from his attorney was anything other than his own choice nor does he demonstrate that such lack of counsel caused him to be unduly influenced into signing the Settlement.

Even if this claim were sufficiently pleaded, Plaintiff ratified the release by waiting seventeen months before moving to repudiate the contract. Under New York law, a party may ratify a release entered into under duress by, among other things, remaining silent for a period of time after the agreement was made. *See VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122–23 (2d Cir. 2001) ("If the releasing party does not promptly repudiate the contract or release, he will be deemed to have ratified it."); *see also United States v. Twenty Miljam–350 IED Jammers*, 669 F.3d 78, 91 (2d Cir. 2011) (finding contract ratified after period of four months). Plaintiff first moved to repudiate the Settlement in February 2021 — roughly

7

seventeen months after the signing on October 29, 2019.  This long period of time before contesting the Settlement constitutes ratification by Plaintiff.

    **2.**   **Fraud**

  Plaintiff asserts that the Settlement is void due to fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation by Defendants.  These claims each rest on assertions that Defendants made misrepresentations with respect to the loans offered to Plaintiff.  "A plaintiff may invalidate a release for fraud, however, 'only if it can identify a separate fraud from the subject of the release.'" *Est. of Mautner v. Alvin H. Glick Irrevocable Grantor Tr.*, No. 19 Civ. 2742, 2019 WL 6311520, at *4 (S.D.N.Y. Nov. 25, 2019) (quoting *Centro*, 17 N.Y.3d at 276).  "Were this not the case, no party could ever settle a fraud claim with any finality." *Centro*, 17 N.Y.3d at 276.

  Plaintiff's claims for fraud and negligent misrepresentation fail because the allegations upon which they are premised do not make out any fraud separate from the subject of the terms of the release.  Plaintiff released Defendants from "any and all claims" related to the loan repayment plans extended to Plaintiff between January 1, 2002 and October 29, 2019.  (*See* Settlement at 1, 2 ¶ 2.)  Plaintiff's allegations of fraud are all centered around the allegedly unlawful loan practices by Defendants — a topic which is wholly covered under the terms of the Settlement.  Because Plaintiff does not allege any fraudulent acts separate from the subject of the terms of the Settlement, the Settlement is not void and his claims of fraud fail.

    **B.**   **Standing to Bring Criminal Charges**

  Plaintiff further alleges that Defendants violated various state and federal criminal statutes.  But "[t]he law is well settled that no private citizen has a constitutional right to bring a criminal complaint against another individual." *Silverstein v. Barnes*, No. 85 Civ. 8748, 1986 WL 4545, at *3 (S.D.N.Y. Apr. 10, 1986), *aff'd*, 798 F.2d 467 (2d Cir. 1986) (citing *Leeke v.*

8

*Timmerman*, 454 U.S. 83 (1981)); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). In rare situations, a criminal statute does confer a private right of action. *See Chrysler Corp v. Brown*, 441 U.S. 281, 316 (1979). But Plaintiff has not identified any basis for a private right of action in the statutes he has cited. *See* 18 U.S.C. §§ 371, 666, 1341, 1343; N.Y. Exec. Law §§ 105.05, 120.25, 155.35, 190.55, 190.65, 460.20.

Plaintiff also lacks standing to bring a claim under N.Y. Exec. Law § 63(12). *See Williams v. Philips Med. Systems, Inc.*, 58 N.Y.S.3d 839, 841 (4th Dep't 2017) (affirming dismissal of plaintiff's claim under Section 63(12) for lack of standing). This statute permits only the New York State Attorney General to bring actions against persons who "engage[s] in repeated fraudulent or illegal acts or otherwise demonstrate[s] persistent fraud or illegality in the carrying on, conducting or transaction of business." N.Y. Exec. Law § 63(12).

Because Plaintiff lacks standing to bring civil actions under criminal statutes, his claims relating to these statutes must be dismissed as well.[2]

**C.     Breach of Contract and Breach of Covenant**

"Under New York law, a breach of contract claim requires (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Balk v. New York Inst. of Tech.*, 683 F. App'x 89, 95 (2d Cir. 2017) (summary order) (marks omitted).

Plaintiff alleges that Defendant Columbia breached the terms of the Settlement by sending him a tax form that mislabeled his tuition refund as income. Although Plaintiff does not explain what text of the Settlement was allegedly violated, the Court understands Plaintiff to allege that Defendant violated the provision of the Settlement which reads: "Columbia shall

---

[2] Specifically, Counts 3–6 and 9–15 of the Complaint are dismissed.

9

refund to Mr. Ogbolu the sum of $35,779.80 (Refund)." (Settlement at 2, ¶ 1.) The text of the Settlement does not specify how Defendants must refund Plaintiff, and Plaintiff acknowledges that a properly labeled form was sent to him roughly two weeks after he notified Defendants. (Third Amended Complaint ¶ 298.) Accordingly, Plaintiff was placed in the position he was entitled to under the terms of the contract — specifically, that Defendant paid him the Settlement Payment and refunded him the $35,779.80 as stipulated in the Settlement. (Settlement at 2, ¶ 1.) Therefore, the Court concludes that Defendant Columbia's erroneous mislabeling of the refund form does not constitute a breach of contract.

Even assuming that Defendants breached the contract by mislabeling the form, Plaintiff's claim would also fail because he does not allege cognizable damages. Plaintiff alleges that the breach and related conduct caused him to suffer various emotional and physical harms as well as "lost employment opportunities, and other economic damages," none of which are further explained. (Third Amended Complaint ¶ 301.) Under New York law, Plaintiff is not entitled to recover for the emotional damages alleged. *See Kruglov v. Copart of Conn., Inc.*, 771 F. App'x 117, 119 (2d Cir. 2019) (summary order). Plaintiff is also not entitled to recovery for consequential damages such as lost employment opportunities or other unspecified economic damages where he fails to provide any information at all as to those opportunities. *See Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 111 (2d Cir. 2007) (holding that where a party seeks consequential damages, he must prove the existence of damage and the amount of damage with reasonable certainty). Plaintiff has failed to demonstrate with reasonable certainty what these damages are, and thus has failed to allege cognizable damages.

Plaintiff further alleges that Defendants breached the covenant of good faith and fair dealing implied in the Settlement. This allegation is premised on the exact behavior as the

breach of contract claim. "New York law does not treat a breach of the covenant of good faith and fair dealing claim as one that is *separate* from a breach of contract claim where the claims are based on the same facts." *Giller v. Oracle USA, Inc.*, 512 F. App'x 71, 73 (2d Cir. 2013) (summary order). This claim is dismissed as duplicative. *See Aledia v. HSH Nordbank AG*, No. 8 Civ. 4342, 2009 WL 855951, at *4 (S.D.N.Y. Mar. 25, 2009).

### D. Discrimination

Plaintiff asserts several claims under local, state, and federal laws that Defendants discriminated against him. Plaintiff's allegations relate to conduct from both before and after the signing of the Settlement. Claims relating to conduct occurring before the signing of the Settlement are precluded by the Settlement. Thus, the Court examines only the conduct occurring after the Settlement in assessing these claims.

#### 1. ADA and NYSHRL

Plaintiff's claims raised under Section 504 of the Rehabilitation Act, Title III of the Americans with Disabilities Act ("ADA"), Section 296(4) of the New York State Human Rights Law ("NYSHRL"), and Section 40-C of the New York Civil Rights Law are analyzed under the same legal standards as relevant here.[3] *See Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (analyzing ADA and NYSHRL claims under the same standard); *Feltenstein v. City of New Rochelle*, No. 14 Civ. 5434, 2019 WL 3543246, at *2 (S.D.N.Y. Aug. 5, 2019) (analyzing ADA, NYSHRL, and New York Civil Rights Law under the same standard); *Krist v. Beth Israel Med. Ctr.*, No. 17 Civ. 1312, 2021 WL 4442943, at *6 (S.D.N.Y. Sept. 28, 2021) (noting claims brought under ADA and Section 504 are analyzed under the same standard). "In

---

[3] Counts 16, 17, 18, and 20, respectively. Counts 16–18 are asserted solely against Columbia while Count 20 is asserted against all defendants.

11

order for a plaintiff to establish a prima facie violation under these Acts, [he] must demonstrate (1) that [he] is a qualified individual with a disability; (2) that the defendants are subject to one of the Acts; and (3) that [he] was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004) (internal quotation marks and alterations omitted).

Plaintiff alleges that Defendants should have been aware of his obvious psychological conditions and mental distress based on the frequency and nature of his communications. (Third Amended Complaint ¶¶ 216, 226, 235, 256.) Plaintiff further alleges that the mislabeled refund form sent to him by Defendants constituted intentional discrimination because Defendants knew that it would exacerbate his psychological condition. But Plaintiff has not alleged any facts to support that Defendants denied Plaintiff any opportunities, singled Plaintiff out, or treated Plaintiff differently than any others. And Plaintiff's allegation that "Defendant Columbia has treated Plaintiff differently from and less preferably than similarly situated students and alumni" is conclusory. (Third Amended Complaint ¶ 217); s*ee Harris*, 572 F.3d at 72 ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotations and alterations omitted)). Without any allegations suggesting that Plaintiff received treatment that differed from that afforded individuals without Asperger syndrome, there is no basis for an inference of discriminatory intent or treatment, and these claims must fail.

### 2. NYCHRL

Plaintiff also alleges that Defendants discriminated against him in violation of Section 8-107(4) of the New York City Human Rights Law ("NYCHRL"). A claim under the NYCHRL

"must be reviewed 'independently and more liberally than their federal and state counterparts.'" *Livingston v. City of New York*, No. 19 Civ. 5209, 2021 WL 4443126, at *15 (S.D.N.Y. Sept. 28, 2021) (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)). A *prima facie* claim under this statute only requires a plaintiff to demonstrate "differential treatment" due to disability. *Id.* The totality of circumstances around the conduct in question must be considered when considering the claim, but where the plaintiff fails to demonstrate a discriminatory motive on the part of the defendant or conduct that does not exceed "petty slights or trivial inconveniences," the claim must fail. *See Id.* at *16.

Plaintiff's claim under the NYCHRL is premised on the same set of behavior as the other claims: that Defendants discriminated against Plaintiff by sending him a mislabeled refund form. No new facts are alleged in this claim, and it therefore fails for the same reasons: Plaintiff provides insufficient allegations to infer discriminatory intent or differential treatment by Defendants.

### 3. Aiding and Abetting

Plaintiff also alleges aiding and abetting claims against Defendants under the NYSHRL and NYCHRL.[4] Because Plaintiff has failed to allege an underlying violation of either statute, these claims must fail. *See, e.g.*, *Livingston*, 2021 WL 4443126, at *32 (granting summary judgment as to a claim of aiding and abetting discrimination claims under the NYSHRL and NYCHRL where the underlying claims were not established).

### E. Emotional Distress

Plaintiff alleges that Defendants are liable for both negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED") resulting from

---

[4] Counts 119 and 22, respectively.

conduct regarding the Defendants' erroneous labeling of the refund form as income. Plaintiff claims that as a result of this conduct, he suffered emotional and physical distress in addition to numerous other harms. (Third Amended Complaint ¶¶ 318, 328.)

### 1. Negligent Infliction of Emotional Distress

To make out a claim of NIED in New York, a plaintiff "must show '(1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress.'" *Truman v. Brown*, 434 F. Supp. 3d 100, 122 (S.D.N.Y. 2020) (quoting *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 297 (S.D.N.Y. 2015)). In New York, "extreme and outrageous conduct" is conduct "that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Goldstein v. Mass. Mut. Life Ins. Co.*, 875 N.Y.S.2d 53, 55 (1st Dep't 2009)). "The standard of outrageous conduct is strict, rigorous and difficult to satisfy." *Scollar v. City of New York*, 74 N.Y.S.3d 173, 178 (1st Dep't 2018) (internal quotations omitted).

Plaintiff's NIED claim fails because he does not allege facts that meet the high standard for "extreme or outrageous conduct." The alleged conduct underlying Plaintiff's claim for NIED is Defendants' reporting of Plaintiff's refund as income and subsequent refusal to respond to his concerns regarding the error once the error had been amended. Plaintiff's argument rests on the proposition that, because Defendants were aware of Plaintiff's self-diagnosis of Asperger syndrome, they should have been aware that such actions would cause Plaintiff severe emotional distress. (*See* Third Amended Complaint ¶ 316.) Even if the mislabeling of the form were intentional, this conduct is well outside the realm of conduct that could be considered "extreme" or "outrageous" under New York's high standard. *See, e.g., Truman*, 434 F. Supp. 3d at ____ (finding a manipulative but consensual sexual relationship not to amount to extreme or

14

outrageous behavior); *Chanko v. Am. Broad. Cos., Inc.*, 27 N.Y.3d 46, 57 (2016) (finding filming of patient's medical treatment and death not to amount to extreme or outrageous conduct).

### 2. Intentional Infliction of Emotional Distress

In New York, a claim for IIED requires a showing of four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019) (quoting *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115, 121 (1993)).  Plaintiff's IIED claim is premised on the same alleged conduct as the NIED claim, both of which are held to the same standard with respect to "extreme and outrageous conduct."  *See Truman*, 434 F. Supp. 3d at 122 (finding claim of NIED based on same conduct as IIED to fail where conduct fails to meet standard).  Because Plaintiff fails to allege facts that meet the high standard for extreme and outrageous conduct sufficient to satisfy the first element for a claim of IIED, his claim fails.

### F. Negligent Supervision and Retention

Plaintiff asserts a claim of negligent supervision and retention against Defendant Columbia.  Under New York law, a plaintiff must show "the standard elements of negligence" and additionally: "(1) that the tortfeasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and, (3) that the tort was committed on the employer's premises or with the employer's chattels." *Doe v. Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014) (citations and internal quotations omitted).

Here, Plaintiff does not plead any facts that would support a finding that Defendant Columbia knew or should have known of its employee's propensity for the conduct which caused Plaintiff's injuries prior to those injuries' occurrence.  Instead, Plaintiff asserts that

Columbia "knew, or in the exercise of reasonable care should have known" that their employees were acting unlawfully "given the sheer scope of fraud, negligence, and discrimination that [Columbia] permitted to occur" over a period of years. (Third Amended Complaint ¶ 372.) This broad conclusory allegation is insufficient to make out a claim, and this claim therefore must be dismissed.

### G.  Leave to Replead

In a letter submitted to the Court, Plaintiff requests permission to correct any deficiencies in the complaint in the event that the Court grants the motion to dismiss. (Dkt. No. 90 at 6.) Courts should "freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). But "the grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Where a plaintiff has had previous opportunities to amend a complaint, a court is justified in denying a request to amend. *See id.*; *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 147 (2d Cir. 2020). Plaintiff has had several opportunities to amend his complaint and the Court concludes that further amendment would be futile. Accordingly, leave to replead is denied.

## IV.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss the complaint with prejudice is GRANTED. Plaintiff's motion for a preliminary injunction is DENIED.[5]

---

[5] Because Plaintiff's underlying claims have been dismissed, it follows that there is neither a likelihood of success on the merits of his claims nor substantial questions going to the merits of those claims. The motion for preliminary injunction is therefore denied. *See N. Am. Soccer League*, 883 F.3d at 37.

16

Case 1:21-cv-01697-JPO-RWL   Document 100   Filed 01/31/22   Page 17 of 17

The Clerk of Court is directed to close the motions at Docket Number 79, 93, and 97 and to close the case.

SO ORDERED.

Dated: January 31, 2022
      New York, New York

_____
J. PAUL OETKEN
United States District Judge